STEVEN JUDE HOFFENBERG
Prison Number 35601054
Fort Dix Prison
P.O. Box 2000
Fort Dix, New Jersey 08640

OWNER NEW YORK POST PUBLISHING CORP.

SEE: NEW YORK POST NEWSPAPER DOT.COM

JUNE 8, 2010 DATE
CHAMBERS OF
HONORABLE NANCY GERTNER
US DISTRICT JUDGE
1 COURT HOUSE WAY
BOSTON MA 02210

RE: ABUHOURAN V WINN etal
07CIV___ JUDGE GERTNER

MOTION BY LETTER, REQUESTING JUDGE GERTNER ORDER, ALLOWING HOFFENBERG, TO FILE, A FRIEND OF THE COURT BRIEF, ABUHOURAN V WINN etal

① JUDGE GERTNER IS REQUESTED TO ORDER, THAT HOFFENBERG, MAY FILE, HIS FRIEND OF THE COURT BRIEF, IN ABUHOURAN V WINN etal.

② HOFFENBERG ACTED FOR, THE US DOJ OFFICE OF INSPECTOR GENERAL BOSTON MA, REGARDING ISSUE(S) IN ABUHOURAN V WINN etal.

③ HOFFENBERG V UNITED STATES CASE 10CIV 2788 (DNJ JUNE 2010) CAPTION WITH EXHIBIT(S), ARE ATTACHED HERETO, IN SUPPORT OF THIS MOTION.

④ JUDGE GERTNER IS REQUESTED TO PROVIDE HOFFENBERG WITH ABUHOURAN V WINN etal CASE NUMBER, WITH NAME(S) AND ADDRESS, FOR APPEARING COUNSEL.

THANK YOU.

RESPECTFULLY. BY [signature]




1112 16th Street, N.W.
Washington, D.C. 20036 Tel: 202-269 5337
info@nblr.us www.nblr.us

The Honorable Walter E. Fauntroy
*President*
Dr. Dorothy I. Height
*Vice President*
The Honorable Merv M. Dymally
*Secretary*
Joseph E. Madison
*Treasurer*
Eulas Dortch
*Assistant Treasurer*

11 December 2009

**Via FedEx, E-mail and Facsimile**

UNITED STATES CONGRESS ETHICS COMMITTEE APPROVE, IN MARCH 2010, CHAIRMAN JOHN CONYERS JR, INTERVENTION WITH HOFFENBERG

The Hon. John Conyers, Jr.
Chairman, Judiciary Committee
U.S. House of Representatives
2426 Rayburn H.O.B.
Washington, DC 20515

**RE: Steven Jude Hoffenberg**

Dear Mr. Conyers:

Unlike other matters that I have brought to your attention in the past, the one that I bring to your attention now promises to both enable the U.S. Government to recover hundreds of millions of dollars, as well as to bring several notorious criminals to justice.

I write to request your assistance as Chairman of the U.S. House Judiciary Committee to encourage the U.S Department of Justice ("DOJ") to effect the release of Mr. Steven Jude Hoffenberg, who has been improperly incarcerated in federal prison for almost 15 years, and who is eligible for release under the Second Chance Act.

In addition to correcting egregious prosecutorial, defense counsel and Bureau of Prisons misconduct, Mr. Hoffenberg's release will precipitate (1) $500 million restitution to former Towers Financial Corporation investors, (2) DOJ's receipt of $2 billion in restitution, (3) the Ohio US Attorney's receipt of information about the persons responsible for the unsolved murder of a tax attorney, and (4) development of the Christ Assistance Ministry Charter Schools designed by Mr. Hoffenberg.

"ASSOCIATED PRESS", ARE COVERING HOFFENBERG FULL TIME, FOR A MAJOR STORY RELEASE SOON.

The following salient facts support my request.

**Mr. Hoffenberg's Age & Health and Release Eligibility under Second Chance Act**

Born on 12 January 1945, in less than a month, Mr. Hoffenberg will be 65 years of age, the age at which Federal inmates are eligible for early release for health reasons, pursuant to the Second Chance Act (Public Law 110-199).

After almost 15 years in prison, Mr. Hoffenberg has a number of serious physical maladies that are not being properly addressed at the Fort Dix prison in New Jersey. He suffers from untreated hypertension, diabetes, and a slipped/herniated disc in his back. Almost toothless, he is in need of immediate dental attention, which has been denied him. In addition, he has a torn rotator shoulder cuff on his right shoulder and a skin cancer (also untreated) on his right leg.

A major provision in the Second Chance Act was to allow early release to eligible offenders over the age of 65 who have already served a total of at least 10 years or 75% of their prison sentence, whichever is greater. An eligible offender is defined as an inmate who is not a lifer, has not committed a crime of violence or a sex offense, does not have a history of violence, has not escaped or attempted escape, and that the Federal Government has determined that early release will result in a substantial net reduction of costs to the Federal Government. If you read between the lines, those inmates eligible for early release are those federal prison inmates who are elderly, in bad health, chronically or acutely ill, and are piling up huge medical bills for the Bureau of Prisons.

**Restitution**

Mr. Hoffenberg's sentence requires restitution of $500 million dollars for former Towers Financial Corporation investors. Upon receiving an agreement for his release from prison, Mr. Hoffenberg will reveal the location of funds his former business partner and convicted felon Jeffrey Epstein holds within a $15 billion hedge fund. In addition to his tapping this hedge fund as the source for the $500 million restitution, Mr. Hoffenberg will pledge $2 billion for the Justice Department and $50 million for the Detroit Fireman and Policeman State Pension Funds.
HOFFENBERG RESTITUTION REPAYMENT

In addition, in the style of Michael Milken, upon release, Mr. Hoffenberg will provide further philanthropic restitution by establishing minority community charter secular schools, utilizing the assistance of local church members, collectively organized within a church collaborative effort called the Christ Assistance Ministry.

**Prosecutorial & Defense Counsel Misconduct**

The president of Towers Financial Corporation, Mr. Hoffenberg was convicted in the Southern District of New York on his guilty plea entered on 20 April 1993, to conspiracy to violate the securities law by fraudulently selling securities, mail fraud, conspiracy to obstruct justice and tax evasion.

Mr. Hoffenberg pleaded guilty to the charges on the understanding that the prosecutor, Michael Nardello, would submit a § 5K1.1 motion for a downward departure from sentencing guidelines, based on Mr. Hoffenberg's substantial assistance to the prosecution. The prosecutor never made the motion, nor did Mr. Hoffenberg receive any favorable consideration at the time of sentencing.

Mr. Hoffenberg was sentenced on 7 March 1997 to 20 years in prison. With his pre-sentence incarceration, he has now been in prison for the past 14 years. He will be 65 years old at his next birthday on 14 January 2010.

Several post-plea attorneys for Mr. Hoffenberg have unearthed facts which have established that in violation of 18 U.S.C. §208 -- which prohibits government employees from negotiating employment with a firm with a financial interest in a matter in which the government employee in his position as government employee is involved -- the prosecutor, Daniel Nardello, at the time he was prosecuting Mr. Hoffenberg, was soliciting employment with Decision Strategies, an enterprise that was doing business with the trustee in bankruptcy for Mr. Hoffenberg's Towers Financial Corporation and billed the bankruptcy trustee for nearly $200,000.

Additionally, Mr. Hoffenberg's pre-conviction defense counsel, Jeffrey Hoffman, also took a $450,000 bribe from the bankruptcy trustee in return for facilitating a guilty plea.

At a hearing on the denial of the § 5K1.1 motion, the prosecutor, Daniel Nardello, was not asked any questions concerning his solicitation of employment with Decision Strategies, at which he was employed immediately after he prosecuted Mr. Hoffenberg. This issue was raised during the appeal of the denial of Mr. Hoffenberg's habeas corpus relief. Since this prosecutorial misconduct had not been reviewed in the initial habeas papers, the issue was not addressed by either the District Court nor the Court of Appeals for the Second Circuit.

Several post-plea counsel for Mr. Hoffenberg have written to the Office of Professional Responsibility in the DOJ concerning this prosecutorial misconduct issue. In the absence of a court ruling, the Office declined to act, or even consider the issue, although the facts asserted were uncontroverted. I find it unusual that when furnished with facts concerning a prosecutor's uncontroverted illegal actions, the DOJ refuses to respond because the issue has not been ruled upon by a court of law.

Therefore, both the prosecutor and pre-plea defense counsel were sullied by improper financial conflict of interests.

**Identification of Murder Perpetrator**

Mr. Hoffenberg's former business partner Jeffrey Epstein, has not been forthright with the prosecution in an open murder case in Columbus, Ohio led by United States Attorney Michael Garcia.

In 1997, Jeffrey Epstein and his partner Leslie Wexner were threatened with black mail from Leslie Wexner's attorney, regarding sex crimes with underage girls, crimes for which Mr. Epstein was eventually convicted in Florida. Mr. Epstein and Mr. Wexner contracted for the murder of Mr. Wexner's attorney. Mr. Hoffenberg is willing to reveal the identity and location of the contract killer, in return for reduced or suspension of his remaining prison time.

Of collateral interest, as part of a work-release program after his conviction as a child sex offender, Mr. Epstein was allowed to leave his cell during the day and work from an "office" in West Palm Beach, work that reportedly involved helping the government build a case against Ralph Cioffi and Matthew Tannin, the Bear Stearns hedge fund managers who misled investors in their subprime mortgage investment fund, which imploded last year and cost Mr. Epstein the $67 million he'd invested in the fund.

**Prayer for Relief**

In sum, I write you now, Congressman Conyers, seeking relief for Mr. Hoffenberg. Whatever his crimes, he has served substantial incarceration time. Using the above information and arguments jointly or severally, please encourage and recommend the U.S. Attorney General Eric Holder to review this case, and in the interests of justice, direct the release of Mr. Hoffenberg from prison in time to spend Christmas with his wife Lisa Twardeau Hoffenberg.

At your convenience, I would be pleased to meet with you and your staff to discuss my request and the underlying facts concerning Mr. Hoffenberg's situation.

Thank you for your consideration.

Respectfully yours,

[signature]

The Honorable Reverend Walter E. Fauntroy
Former Member, U.S. House of Representatives
District of Columbia (1971-1990)

FORMER TEXAS GOVERNOR(S)

cc: Mr. Steven Jude Hoffenberg

Ms. Lisa Twardeau Hoffenberg

The Reverend Leonard L. Smalls

Thomas A. Duckenfield III, Esq.

INCLUDING HONORABLE BEN BARNES, HOFFENBERG TFC BOARD MEMBER, WITH HONORABLE MARK WHITE FRIEND.

→ ARDONO + YOSS NATIONAL LAW FIRM, WASHINGTON DC PARTNER, WHO IS THE HOFFENBERG "GENERAL COUNSEL."

MR DUCKENFIELD III, ATTENDED SCHOOL, WITH THE, "FIRST LADY AND PRESIDENT OF THE UNITED STATES."

Steven Jude Hoffenberg
Prison Number 35601054
Fort Dix Prison
P.O. Box 2000
Fort Dix, New Jersey 08640

Plaintiff Pro-se Prisoner

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN COURTHOUSE

STEVEN JUDE HOFFENBERG, acting in (7) Seven TFC Restitution Court Orders, Multi Billion Dollar Plaintiff Constructive Trust, That Must Re-Pay Major State Pension Fund(s), including Over 200,000 Plaintiff Restitution Investor(s) in Securities, Under Mandated Federal Circuit Law,

Plaintiff Pro-se

vs.,

UNITED STATES OF AMERICA, On Behalf of, The Federal Bureau of Prisons, B.O.P., in Non-Stop Tort Obstruction Violation(s), Contaminated Entire Time Frame Stopping The Plaintiff Restitution Repayment(s),

Defendant.

CIVIL CASE

NUMBER 10-2788

JUDGE

SIMANDLE

FEDERAL TORT CLAIMS ACTION

COMPLAINT

**NEW YORK POST PUBLISHING CORPORATION INTRODUCTION IN DRAFT SEEKING YOUR WRITTEN COMMENT(S) IN CREATIVE ISSUE COVERAGE DAILY**

1. Steven Jude Hoffenberg, **SJH**, did save the **NEW YORK POST NEWSPAPER** from going out of business. See **NewYorkPost.com**.

2. SJH will soon publish under **NEW YORK POST PUBLISHING CORPORATION**, herein after, **NEWSPAPER**.

3. Said newspaper created **CHANGE** in the newspaper industry, under the following **VITAL** publishing:

(a) **HIGH PROFILE PERSON(S)** will write each story issue that the newspaper covers daily. Special **25¢** newspaper low **PRICE**.

(b) **AD** sale(s) are by client **COMMISSION CONTRACT** based on the **AMOUNT** of product **SOLD** from each ad. **NO UP FRONT** ad cost are available.

(c) **EACH PROBLEM** our readership face daily are **COVERED**. Government cover up are discerned and now **UNDERSTOOD**.

4. The newspaper will be **PRINTED** by a major newspaper such as Long Island Newsday, or another large newspaper.

5. Our management **CREATIVE TEAM** provides the powerful **HIGH PROFILE** writer(s) that include movie stars, sports stars, Wall Street banking leaders, elected and formerly elected government officials, doctors, attorneys, all faith based leadership, military war experts, with each **HIGH PROFILE EXPERT** in every part of **AMERICAN LIFE**. The readers will now learn and know what must be done in overcoming the problem(s)



"EXHIBIT 2"

6. High profile **EXPERT** writer(s) are demanded by our **READERSHIP**, to answer the daily complex problem(s) the **READER(S) FACE**.

7. **AD** sale(s) are **SOLD** under client commission product sale(s) contract. The **AD COST** are based on the amount of product **SOLD** from each **AD**. No up front ad cost are available.

(a) All **EMPLOYMENT ADS** are published at **NO COST**, in order to put **AMERICA BACK TO WORK**.

The **PUBLIC** wants the real truth **NOW!**

"ExHiBit 2"

STEVEN JUDE HOFFENBERG
Chairman & CEO (1975-1993)
Towers Financial Corporation
305 East 40th Street, Suite 8A
New York, New York 10016
Phone: (212) 949-1935

RE: GUARANTEED COLLECTION CORPORATION'S JOINT VENTURE WITH SOME THREE HUNDRED (300) SMALL COLLECTION AGENCIES

**INTRODUCTION INTO THE MR. HOFFENBERG PAST OWNERSHIP OF TOWERS FINANCIAL CORPORATION HEREINAFTER, TFC, WHICH WAS DEPOSITING 1½ BILLION DOLLARS PER YEAR IN 1992-1993**

1. - TFC acted as a Collection Agency with their in-house legal department staffed by collection attorneys from the TFC inception when Mr. Hoffenberg formed TFC in 1975. Mr. Hoffenberg was the controlling share holder of TFC from it's inception in 1975, and then ongoing to April 1993. In addition, TFC provided their 27,000 clients with collection agency assistance, and litigation assistance to recover their past due account claims. TFC provided their clients with the purchase of their past due claims, or financing for the client's account past-due claims.

2. - In 1986 TFC became a non-reporting public corporation when Mr. Hoffenberg took over a non-operating, and non reporting public corporation. Thereafter, TFC with the TFC operating corporations sold some $650 Millions Dollars in stock notes and bond securities on Wall Street in the capital markets. Mr. Hoffenberg did a joint-venture agreement with a securities broker dealer corporation in 1987. That securities firm sold the above $650 Million Dollars in TFC stock notes and bonds with the assistance of other contracted securities broker dealer corporations. In



EXHIBIT 2

1993 and 1994 TFC filed all of it's operating corporations into their chapter 11 bankruptcy proceedings. The bankruptcy filings were caused by the filed litigation against TFC and Mr. Hoffenberg with other persons who were co-defendants in the Fraud lawsuit filed by the United States Securities and Exchange Commission (SEC). The SEC claimed that TFC had overvalued their assets under Fraud when TFC sold the above $650 Million Dollars in securities.

**TFC COLLECTION OPERATIONS AND ACCOUNT CLAIMS FINANCE AND PURCHASE PROGRAMS FOR THE TFC CLIENTS**

3. - TFC collection agency account claims recovery business services over 27,000 clients in the HealthCare and Corporate Industries. TFC provided their clients with collection account claims recovery assistance and/or litigation assistance in the recovery of the TFC clients past-due account claims. TFC's in-house legal department was staffed by expert collection attorneys who filed some five hundred (500) lawsuits per week to recover the client account past-due claims.

4. - TFC provided their clients with the financing for their past-due account claims and/or the purchase of the past-due account claims. In addition, TFC did provide their clients with financing for all of their account claims and other assets. At the time of the TFC chapter 11 bankruptcy filing in 1993, the TFC corporations were then depositing 1½ Billion Dollars per year.





5. - TFC had built a nationwide sales force of account executives who assisted clients in every city in America. In addition, TFC built a nationwide telemarketing operation that provided client appointments for the TFC account executives.

**THE COLLECTION OPERATIONS ASSISTED CLIENTS IN THE HEALTH CARE AND CORPORATE INDUSTRIES IN AMERICA AND AROUND THE WORLD**

6. - TFC collection claims operations serviced some 27,000 clients in America and around the world. TFC was depositing some 1½ Billion Dollars per year from all of its operations on or about 1992-1993.

**THE HEALTH CARE CLIENTS**

7. - The clients were all types of Health Care providers such as hospitals, nursing homes, medical clinics, and other Health Care Providers.

**THE HEALTH CARE CLIENT ACCOUNT CLAIMS DEBTORS**

8. - The Health Care client account claims debtors were insurance companies, Medicaid, Medicare, Blue Cross, Blue Shield, Health Maintenance Organizations, HMO, Unions and Third Party Corporations that paid the Health Care benefits for many corporations under the Corporate Employees Health Care Benefit Coverage Programs. Recovery by collection and/or litigation was made from the above Health Care debtors.



ExHiBit 2

**THE CORPORATE CLIENTS ACCOUNT CLAIMS DEBTORS**

**9.** - The corporate clients were each and every type of corporation that provided credit to other corporations. In some client corporations, the claims account debtors were consumers. Recovery by collection and/or litigation was made from every type of corporate debtor in America and around the world.

**THE NEW GUARANTEED COLLECTION CORPORATION GUARANTY OF RECOVERY CLIENT PAST-DUE ACCOUNT CLAIMS PROGRAMS**

**10.** - Each small collection agency staff will now sell our client guaranty of past-due account claims recovery programs with all of the client collection programs set forth in this document.

**GUARANTEED COLLECTION CORPORATION HEREINAFTER GCC PROVIDES CLIENTS WITH THEIR GUARANTY OF RECOVERY COLLECTION PROGRAMS FOR THE CLIENT PAST-DUE ACCOUNT CLAIM DEBTORS**

**11.** - GCC provides clients with the most **powerful collection assistance programs available today.** Each GCC client has the right to use our guaranty of past-due collection account claim debtors recovery program(s). GCC provides the guaranty recovery programs that **stops our clients loss** on their past due account claims recovery. **GCC underwrites** the level of recovery that each client will use to stop their loss on their past due account claims recovery. These powerful programs allows GCC clients to **project and know** the amount they will recover from their



EXHIBIT 2

past due account claims.

**OVER TEN THOUSAND (10,000) SMALL COLLECTION AGENCY OWNERS UNDERSTAND THE NEW GCC BACK OFFICE COLLECTION PROGRAMS THAT WILL CHANGE THEIR SMALL COLLECTION AGENCY BUSINESS WITH THE USE OF EVERY COLLECTION ACCOUNT CLAIMS PROGRAM SET FORTH HEREIN**

**12.** - GCC will now form a joint venture agreement with over three hundred (300) small collection agency owners. Each joint venture agreement will be different based on the benefits to GCC from each small collecion agency partnership. The GCC **back office operations** will assist the clients in all of the above collection finance and guaranty account claims recovery programs. The small collection agency will act as a GCC sales office that are on computer link with the GCC back office operations. All of the above collection with litigation and finance client client assistance programs will be performed in the GCC back office operations. The small collection agency staff will sell the above client programs.

Kindly call Steven Jude Hoffenberg at the above phone number to review the GCC client recovery programs and the small collection agency joint venture partnership benefits.

**SPECIAL NOTE: NEGATIVE DISCLOSURE.** This document makes **no offer** or binding legal representations. The reading of this document can only be used to open communications with GCC. Each party must thereafter be assisted by their attorney who **must understand** the **full history** of TFC and Mr. Hoffenberg. Each element of the small collection agency GCC agreement must be reviewed by their attorney.



EXHIBIT 2

past due account claims.

**OVER TEN THOUSAND (10,000) SMALL COLLECTION AGENCY OWNERS UNDERSTAND THE NEW GCC BACK OFFICE COLLECTION PROGRAMS THAT WILL CHANGE THEIR SMALL COLLECTION AGENCY BUSINESS WITH THE USE OF EVERY COLLECTION ACCOUNT CLAIMS PROGRAM SET FORTH HEREIN**

**12.** - GCC will now form a joint venture agreement with over three hundred (300) small collection agency owners. Each joint venture agreement will be different based on the benefits to GCC from each small collecion agency partnership. The GCC **back office operations** will assist the clients in all of the above collection finance and guaranty account claims recovery programs. The small collection agency will act as a GCC sales office that are on computer link with the GCC back office operations. All of the above collection with litigation and finance client client assistance programs will be performed in the GCC back office operations. The small collection agency staff will sell the above client programs.

Kindly call Steven Jude Hoffenberg at the above phone number to review the GCC client recovery programs and the small collection agency joint venture partnership benefits.

**SPECIAL NOTE:** **NEGATIVE DISCLOSURE.** This document makes **no offer** or binding legal representations. The reading of this document can only be used to open communications with GCC. Each party must thereafter be assisted by their attorney who **must understand** the **full history** of TFC and Mr. Hoffenberg. Each element of the small collection agency GCC agreement must be reviewed by their attorney.



EXHIBIT 2